[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

No. 96-7170
_____

D. C. Docket No. CV 96-D-699-N

MILLER B. ENGELHARDT, M.D., an
individual,

Plaintiff-Appellee,

versus

THE PAUL REVERE LIFE INSURANCE COMPANY,
of Worcester, Massachusetts,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

**(April 27, 1998)**

Before TJOFLAT and HULL, Circuit Judges, and KRAVITCH, Senior Circuit Judge.

HULL, Circuit Judge:

Defendant Paul Revere Life Insurance Company appeals from the district

court's order granting Plaintiff Miller B. Engelhardt's motion to dismiss his ERISA

claim and motion to remand his remaining fraud claim to state court. After review, we reverse.

## I. FACTS

### A. Paul Revere's Policy

Plaintiff Miller B. Engelhardt ("Engelhardt") was one of four surgeons who formed Montgomery Orthopaedic Surgeons, P.C. ("Montgomery Orthopaedic"). Montgomery Orthopaedic applied for membership in a multi-employer trust that provided group disability insurance coverage to the eligible employees of the participating employers.

Defendant Paul Revere Life Insurance Company ("Paul Revere") established the trust and issued a group insurance policy to the trust. The participating employers paid premiums to the trust on behalf of their eligible employees, and the trust in turn paid the premiums to Paul Revere. Paul Revere approved Montgomery Orthopaedic's application for membership in the trust. Montgomery Orthopaedic became a participating employer effective July 1, 1993.

To become eligible for coverage under Paul Revere's group policy, each of Montgomery Orthopaedic's employees was required to submit an individual application that provided proof of insurability. The group policy provided that Paul Revere retained the right to deny eligibility to employees who did not provide

satisfactory proof of insurability.

Plaintiff Engelhardt submitted his individual application for coverage as an employee of Montgomery Orthopaedic. In his application, Engelhardt disclosed that he suffered from glaucoma. After reviewing this disclosure, Paul Revere required Engelhardt to sign an amendment to his application that excluded benefits for disability related to "either or both eyes."

Initially, Engelhardt objected to the breadth of the exclusion, arguing that the exclusion should be limited to glaucoma-related problems. Stan Montgomery, the independent insurance agent who sold Montgomery Orthopaedic the policy, allegedly assured Engelhardt that the amendment would be construed to exclude coverage for glaucoma-related problems only. On August 17, 1993, Paul Revere sent Engelhardt a letter further assuring him that the exclusion would be applied "with common sense and reason" and would not be used to deny benefits for, inter alia, accidental "lacerations, puncture wounds, or burns to the eyes, unrelated to treatment or surgery for an eye condition." (R.2-14, ex. 1-C.) Relying on these assurances, Engelhardt signed the amendment on October 25, 1993. His coverage under the policy was made retroactive to July 1, 1993.

In October 1995, Engelhardt suffered a detached retina, unrelated to his glaucoma, and was left unable to perform surgery. Engelhardt filed a claim for

3

disability benefits.  Under the terms of the policy, Paul Revere had the exclusive right to determine eligibility for benefits.  Paul Revere denied the claim based on the eye exclusion in the amendment to Engelhardt's application for coverage.

Engelhardt appealed the denial, arguing that he had been assured that the exclusion would apply only to  pre-existing, glaucoma-related conditions.  Paul Revere acknowledged the appeal and invited Engelhardt to provide additional information, such as the name of the person who made the assurance, or documentation to substantiate Engelhardt's claim.  Engelhardt provided no further information to Paul Revere; rather, he filed suit.  Paul Revere then affirmed the denial of Engelhardt's claim for benefits.

## B.  Removal To Federal Court

Engelhardt filed suit in Alabama state court alleging that he was fraudulently induced to enter into an insurance contract with Paul Revere.  Paul Revere removed Engelhardt's action to federal court contending that Engelhardt's claim was preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA").  Once in federal court, Engelhardt amended his complaint to add a Count II for wrongful denial of benefits under ERISA.

After amending his complaint, Engelhardt filed a motion to remand his fraud claim in Count I.  Engelhardt contended that he was neither a participant nor

4

beneficiary of the plan and that he had no standing to sue under ERISA. Engelhardt argued that ERISA did not preempt his fraud claim and that removal of his fraud claim was improper.

## C. Engelhardt's Acceptance Of ERISA Benefits

During discovery, a memorandum written by a Paul Revere sales representative was produced by Stan Montgomery. The memorandum supported Engelhardt's contention that he had been assured that the policy's eye exclusion applied only to glaucoma-related problems. After that memorandum surfaced, Paul Revere tendered and Engelhardt accepted past disability benefits due under the policy, plus interest. Paul Revere also offered to pay future benefits and "discuss the possible reimbursement of reasonable attorney fees and costs incurred by [Engelhardt], pursuant to ERISA." (Paul Revere's Br. Supp. Mot. Summ. J., at 5.) Paul Revere's payment to Engelhardt was not made pursuant to any settlement agreement, but simply represented Paul Revere's reconsideration of its prior denial of Engelhardt's claim for benefits.

## D. Motions For Summary Judgment, Dismissal, And Remand

After Engelhardt accepted Paul Revere's payment of the benefits, Paul Revere filed a motion for summary judgment on both counts of Engelhardt's complaint. Paul Revere's motion argued that Engelhardt's fraud claim in Count I was preempted and

that Engelhardt had received all the relief available under ERISA in Count II. Engelhardt never responded to the motion.

While the motion for summary judgment was pending, the district court directed Engelhardt to file a motion to dismiss his ERISA claim in Count II. Engelhardt did so, but his motion requested that the dismissal be "with leave to proceed to negotiate with Paul Revere the issue of interest and attorney's fees and with leave to refile a claim for attorney's fees and interest or extracontractual damages (if recoverable under ERISA) in the event an agreement cannot be reached between the parties on those issues." (Engelhardt's Mot. Dismissal Count II, at 2.)

In response to the motion to dismiss, Paul Revere argued that any dismissal of Count II should reflect the court's judgment that all benefits due under the ERISA plan had been paid and that Engelhardt was not entitled to any extracontractual damages under ERISA. Although Paul Revere reiterated its willingness to discuss reimbursement of attorney's fees and noted that it had paid interest on Engelhardt's back benefits, the company stressed that it had not agreed to pay any additional interest on those benefits.[1] Finally, Paul Revere pointed out that the motion to dismiss Count II did not resolve the issue of whether Count I was preempted by ERISA and

---

[1]Engelhardt stated in his motion to dismiss that Paul Revere offered to increase the rate of interest on back benefits to one and one-half percent per month.

6

that Paul Revere had filed a motion for summary judgment.

The district court granted Engelhardt's motion to dismiss Count II, stating it found that Engelhardt and Paul Revere had reached a "de facto settlement." The court's order further stated that "[t]he parties are left to resolve the issues of attorney's fees and the proper interest rate. The court retains jurisdiction over the resolution of these issues following this dismissal." Engelhardt v. Paul Revere Life Ins. Co., 951 F. Supp. 1003, 1006 (M.D. Ala. 1996).

In the same order, the court determined that Engelhardt's fraudulent inducement claim in Count I was a purely state law claim and thus granted Engelhardt's motion to remand that claim. The court's decision to remand was based on two legal conclusions. First, the court found that Engelhardt did not have standing to bring an ERISA claim because, as an employer, he could not be an ERISA participant or beneficiary. Second, the court concluded that Engelhardt's lack of standing saved his fraud claim from ERISA preemption. The district court never addressed Paul Revere's motion for summary judgment.

In this appeal, Paul Revere contends that ERISA completely preempts Engelhardt's fraudulent inducement claim in Count I and that the district court erred by remanding that claim to state court. Paul Revere also argues that the district court abused its discretion by directing Engelhardt to dismiss his ERISA claim in Count II

7

voluntarily and by failing to rule on Paul Revere's motion for summary judgment.

## II. DISCUSSION

### A. Appellate Jurisdiction To Review The Remand

Engelhardt claims that this court lacks jurisdiction to consider whether the district court improperly remanded his fraud claim to state court. He argues that the district court remanded the state law claim pursuant to 28 U.S.C. § 1447(c) due to a lack of subject matter jurisdiction. Remand orders based on § 1447(c) are "not reviewable on appeal or otherwise . . . ." 28 U.S.C. § 1447(d).

Although the district court did not state the statutory basis for its remand order, we conclude that the court remanded the fraud claim pursuant to its discretionary authority under 28 U.S.C. § 1367, and not 28 U.S.C. § 1447.[2] Section 1367(c)(3) empowers the trial court to decline to exercise supplemental jurisdiction over a state law claim if it has dismissed all of the related claims over which it has original jurisdiction. The district court demonstrated its belief that it had original subject matter jurisdiction over the ERISA claim by expressly retaining jurisdiction over the issue of statutory attorney's fees and interest. Thus, the court's subsequent remand

_____

[2]A motions panel of this court reached the same conclusion in denying Engelhardt's motion to dismiss Paul Revere's appeal of the remand order. Engelhardt v. Paul Revere Life Ins. Co., No. 96-7170, slip op. at 1 (11th Cir. June 13, 1997).

8

of the related state law claim was necessarily a decision not to exercise supplemental

jurisdiction under § 1367(c)(3).[3] As a result, we have jurisdiction to review the

_____

[3]We recognize that there is an internal inconsistency in the district court's order–specifically, that Engelhardt had no standing to sue under ERISA and that the district court had jurisdiction over Count II. Paul Revere and Engelhardt are not diverse parties, and Engelhardt's complaint at the time of removal alleged only a state law claim. Therefore, the only potential basis for removing Engelhardt's state law claim to federal court was "complete preemption," whereby a state law claim that falls within the scope of ERISA's civil enforcement section is recharacterized as an ERISA claim for purposes of determining removal jurisdiction. See Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58 (1987).
The district court had two, mutually exclusive ways to resolve the jurisdictional issues before it. First, the court could have found that Engelhardt's state law claim was not completely preempted, and thus not removable, and that there was therefore no basis for exercising jurisdiction over the subsequently added claim in Count II. Second, the court could have found that Engelhardt's original state law claim was completely preempted by ERISA, thus creating a basis for exercising jurisdiction over that claim and the subsequently added claim in Count II. The district court, however, merged these options, finding first that it had jurisdiction over the ERISA claim in Count II and then proceeding to find that Engelhardt's state law claim was not preempted. The problem with this approach is that Count II was added only after the removal to federal court.
The district court's conclusion, albeit in error, that Engelhardt lacks standing to bring an ERISA claim should have led the district court to conclude that complete preemption does not apply in this case and that the state law fraudulent inducement claim was thus not removable to federal court. See Kemp v. International Bus. Mach. Corp., 109 F.3d 708, 712 (11th Cir. 1997) (discussed infra). That conclusion, in turn, would have required the district court to dismiss the complaint as improvidently removed and would have foreclosed appellate review in this court. See 28 U.S.C. § 1447(c) & (d); Quackenbush v. AllState Ins. Co., 116 S. Ct. 1712, 1718 (1996). The district court, however, took a different analytical tack. We read the district court's preliminary discussion of Count II to indicate that the district court believed, even if erroneously, that it had subject matter jurisdiction over the case and that it had discretion to remand Count I under § 1367. Therefore, we have jurisdiction to review the district court's decision not

9

district court's order.[4]

## B. Engelhardt's Standing To Sue Under ERISA As A Plan Beneficiary

The district court erred in finding that Engelhardt was not a beneficiary under the disability insurance plan and thus did not have standing to sue under ERISA. ERISA's civil enforcement section permits two categories of individuals to sue for benefits under an ERISA plan–plan beneficiaries and plan participants. See 29 U.S.C. § 1132(a). A "beneficiary" is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

It is undisputed that Paul Revere's group policy was an ERISA plan, that the policy provided benefits to eligible employees of participating employers, that Montgomery Orthopaedic was a participating employer, and that Engelhardt was an eligible employee designated to receive benefits under the policy. Further,

_____

to exercise supplemental jurisdiction under § 1367(c)(3). As we explain below, since Engelhardt did have standing to sue under ERISA, his state law claim in Count I was completely preempted and the case was removed properly to federal court. The district court thus had no authority to remand Count I.

[4]We review the district court's decision not to exercise supplemental jurisdiction for abuse of discretion. See, e.g., Faucher v. Rodziewicz, 891 F.2d 864, 872 (11th Cir. 1990). To the extent that the court's decision was based on conclusions of law, we review the legal conclusions de novo. See Hook v. Morrison Milling Co., 38 F.3d 776, 780 (5th Cir. 1994).

Engelhardt's claim for benefits under the policy confirms his status as a plan beneficiary. Based on these facts, Engelhardt falls within ERISA's definition of "beneficiary."

Notwithstanding the plain language of the statute, Engelhardt claims that he cannot be an ERISA beneficiary because he is a shareholder of the professional corporation and thus an employer. As support for this contention, he relies on ERISA's anti-inurement provision, which states that "the assets of a plan shall never inure to the benefit of any employer." 29 U.S.C. § 1103(c)(1). Engelhardt argues that allowing a shareholder to recover ERISA benefits would violate this provision.

Engelhardt's status as a shareholder does not preclude him from being a beneficiary under the ERISA plan. See Prudential Ins. Co. of America v. Doe, 76 F.3d 206, 209 (8th Cir 1996) (controlling shareholder was a beneficiary under ERISA); Robinson v. Linomaz, 58 F.3d 365, 370 (8th Cir. 1995) (sole shareholders of corporation were beneficiaries of ERISA plan); Peterson v. American Life & Health Ins. Co., 48 F.3d 404, 408 (9th Cir. 1995) (partner in a business concern had standing to sue under ERISA as a beneficiary). ERISA's anti-inurement provision addresses plan assets–i.e., "assets accumulating in trust and pension funds"–and is designed to guard against "'such abuses as self-dealing, imprudent investing, and misappropriation of plan funds'" by plan administrators and employers. Prudential

11

Ins. Co. of America, 76 F.3d at 209 (quoting Fort Halifax Packing Co., Inc. v. Coyne, 482 U.S. 1, 15 (1987)).  Engelhardt's recovery of benefits would not be paid out of pension or other funds entrusted to Montgomery Orthopaedic by its employees; rather, his recovery would come from the general funds of the insurer.  Such funds are not "plan assets" in this case.  Therefore, no danger of self-dealing or misappropriation arises because Engelhardt's status as a shareholder does not put him in a position to exercise control over Paul Revere's funds.

Engelhardt's anti-inurement argument provides no basis or reason to depart from ERISA's straightforward and clear statutory definition of beneficiary.  We thus find that Engelhardt is a beneficiary within the meaning of § 1002(8).[5]

## C.  Paul Revere's Preemption Defense

Although Count I of Engelhardt's complaint states only a state law claim for fraudulent inducement, the claim falls within ERISA's preemptive scope.  ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and are not exempt under section 1003(b) of this title." 29 U.S.C. § 1144(a).  State law claims that "have a connection with [an] ERISA plan" are thus preempted.  Morstein v. National Ins.

---

[5]In light of this finding, we do not reach Paul Revere's contention that Engelhardt also has standing to sue under § 1132(a) as an ERISA participant.

Serv. Inc., 93 F.3d 715, 722 (11th Cir. 1996) (en banc).

We begin our analysis of Paul Revere's preemption defense by closely examining this court's recent en banc decision in Morstein. The plaintiff in Morstein was president, director, and sole shareholder of Graphic Promotions, Inc., and was responsible for selecting a medical insurance policy for Graphic's employees. The Morstein defendants, an independent insurance agent and the insurance agency for which he worked, sold the plaintiff a medical insurance policy to replace Graphic's existing coverage. The policy was administered and underwritten by insurance companies unaffiliated with the agent and his agency.

The plaintiff alleged that she informed the agent that any policy she purchased would have to provide coverage for preexisting conditions. She also alleged that the agent assured her that the policy he was recommending provided the same coverage for preexisting conditions as Graphic's existing policy. Based on these assurances, the plaintiff elected to purchase the policy recommended by the agent.

More than a year later, the plaintiff underwent hip-replacement surgery and submitted a claim to the ERISA insurer. The insurer denied the claim because it said the surgery was for a preexisting condition that the plaintiff had not disclosed on her application. The insurer rescinded the policy and refunded the premiums paid by Graphic. The plaintiff then sued the independent agent and agency that sold her the

13

policy, alleging a state law claim of fraudulent inducement and seeking compensatory and punitive damages. This court rejected the defendants' contention that the claim was preempted by ERISA, stating:

> The Fifth Circuit has found that Congress did not intend for ERISA preemption to extend to state law tort claims brought against an insurance agent. Perkins v. Time Ins. Co., 898 F.2d 470, 473 (5th Cir. 1990). Such preemption, reasoned the Fifth Circuit, would "immunize agents from personal liability for their solicitation of potential participants in an ERISA plan prior to its formation." Id. We now adopt the rationale of the Fifth Circuit as stated in Perkins and hold that, when a state law claim brought against a non-ERISA entity does not affect relations among principal ERISA entities as such, then it is not preempted by ERISA.

Morstein, 93 F.3d. at 722 (emphasis supplied).[6]

Engelhardt, like the plaintiff in Morstein, has standing to sue under ERISA because he is a plan beneficiary. See 29 U.S.C. § 1132(a). Unlike the independent insurance agent and agency in Morstein, Paul Revere is an ERISA fiduciary, and thus an "ERISA entity," because it had the exclusive authority to determine eligibility for

---

[6]Perkins involved a state law fraudulent inducement claim brought by an ERISA participant against an independent insurance agent, a non-ERISA entity, who allegedly induced the plaintiff to purchase an ERISA-governed insurance policy by misrepresenting the scope of the policy's coverage. The plaintiff in Perkins also sued the insurer of the ERISA plan, but for tortious breach of contract and not for fraudulent inducement. Perkins held the tortious breach of contract claim was preempted by ERISA. Perkins, 898 F.2d at 473.

14

benefits under the plan and to review denied claims. See Libbey-Owens-Ford Co. v. Blue Cross & Blue Shield Mut. of Ohio, 982 F.2d 1031, 1035 (6th Cir. 1993) (claims administrator was ERISA fiduciary because it "retained authority to resolve all disputes regarding coverage"); see also Morstein, 93 F.3d at 722 ("ERISA entities are the employer, the plan, the plan fiduciaries, and the beneficiaries under the plan."). Therefore, this case involves a dispute between principal "ERISA entities."

Engelhardt's suit "affects the relations among principal ERISA entities as such" and "relates to" an ERISA plan for a number of reasons. First, as noted above, Engelhardt's suit is against an ERISA entity. Second, Paul Revere had assumed its role as an ERISA entity and Montgomery Orthopaedic's ERISA plan had been established before, albeit only shortly before, Paul Revere made its alleged misrepresentations to an individual regarding the scope of coverage under the ERISA plan.[7] Third, the impetus for Engelhardt's suit was Paul Revere's decision in its role as an ERISA entity to deny Engelhardt's claim for benefits under the ERISA plan. Although Engelhardt initially attempted to challenge the denial through Paul Revere's

_____

[7]The timing of Paul Revere's misrepresentation about the scope of Engelhardt's coverage does not change the outcome here or defeat Paul Revere's status as an ERISA entity. Paul Revere became an ERISA entity vis a vis Montgomery Orthopaedic and its employees, including Engelhardt, on July 1, 1993, when Montgomery Orthopaedic became a participating employer in the multi-employer trust.

appeals process, Engelhardt ultimately abandoned that approach and filed this lawsuit. Fourth, as a result of documents produced during the discovery process, Paul Revere determined that its denial of benefits was improper and decided to pay Engelhardt the ERISA benefits he had been seeking all along.

In light of these facts, we conclude that Engelhardt's fraud claim affects the ongoing ERISA relationship between Engelhardt and Paul Revere. Applying the rationale of this court in Morstein, therefore, we find that Engelhardt's claim against Paul Revere relates to an ERISA plan and is thus preempted.

## D. "Complete Preemption" And Removal Jurisdiction

Although we have determined that Paul Revere has a valid ERISA preemption defense to Engelhardt's fraudulent inducement claim, that determination does not establish that Engelhardt's complaint was removable to federal court. See Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 25-28 (1983) (holding that ERISA preemption defense, without more, does not create removal jurisdiction). Engelhardt contends that, irrespective of the validity of Paul Revere's preemption defense, Count I was properly remanded to state court because the district court never acquired jurisdiction over Engelhardt's claims. We disagree.

Engelhardt's complaint at the time of removal purported to state only a state law claim for fraudulent inducement. Ordinarily, jurisdiction under 28 U.S.C. § 1331 is

16

proper only if a federal question appears on the face of the plaintiff's well-pleaded complaint.[8]  However, under the "complete preemption" doctrine, "Congress may preempt an area of law so completely that any complaint raising claims in that area is necessarily federal in character and therefore necessarily presents a basis for federal court jurisdiction."  Kemp v. International Bus. Mach., Inc., 109 F.3d 708, 712 (11th Cir. 1997).  If a state law claim is completely preempted, courts are required to recharacterize the claim as one arising under federal law for purposes of determining removal jurisdiction.  Id.

It is well settled that "Congress [] accomplished [] 'complete preemption' in 29 U.S.C. § 1132(a), which provides the exclusive cause of action for the recovery of benefits governed by an ERISA plan."  Id.  (emphasis supplied).  As a result, claims that fall within the scope of § 1132(a) are treated as arising under federal law and thus may be removed to federal court.  As explained in Kemp, removal jurisdiction in cases such as this one "turns on whether the plaintiff[] [is] seeking relief that is available under 29 U.S.C. § 1132(a)."  Id.

Even though Engelhardt's original complaint purported to raise only a state law claim for fraud, it falls within the scope § 1132(a) for three reasons.  First, as

_____

[8]Paul Revere and Engelhardt are not diverse parties for purpose of diversity jurisdiction under 28 U.S.C. § 1332.  Therefore, our analysis is limited to federal question jurisdiction under 28 U.S.C. § 1331.

17

discussed above, Engelhardt and Paul Revere are ERISA entities whose relationship became strained when Paul Revere denied Engelhardt's claim for benefits under the ERISA plan. Thus, Engelhardt and Paul Revere are precisely the types of parties who Congress intended to litigate under § 1132(a), and their dispute is precisely the type of dispute that the statute was intended to resolve. See 29 U.S.C. § 1132(a);[9] cf. Kemp, 109 F.3d at 714 (finding no complete preemption where plaintiff sought benefits from a non-ERISA plan).

Second, Engelhardt's lawsuit is essentially a challenge to Paul Revere's refusal to pay benefits. The last two paragraphs of Engelhardt's original complaint are instructive on this point:

> As a proximate result of the fraudulent inducements by [Paul Revere], plaintiff accepted the policy. Plaintiff lost monthly disability insurance benefits and will continue to lose such benefits from January 1996 until he reaches the age of 65.[10]

---

[9]Section 1132(a) provides in pertinent part:
A civil action may be brought--
(1) by a participant or beneficiary--
(A) for the relief provided for in subsection (c) of this section, or
(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

[10]Under the terms of the plan, disability benefits were not payable beyond the age of 65.

> Wherefore, plaintiff demands judgment against [Paul Revere] in such amount of compensatory damages as a jury will award, a separate amount of punitive damages, and his costs.

(R.1-1 at 5.)   Engelhardt is thus alleging, in effect, that the measure of his compensatory damages is the amount of benefits wrongfully withheld by Paul Revere. The complaint makes no reference to any benefits that Engelhardt gave up by choosing to participate in Paul Revere's plan.  Section 1132(a) provides a cause of action for the recovery of plan benefits and allows for the recovery of costs in bringing such a claim.  Engelhardt thus "seeks relief that is available under § 1132(a)."[11]

Third,  Engelhardt's original complaint did not seek recission of his contract, and Engelhardt has never attempted to terminate their ERISA relationship.  Rather, Engelhardt has stood on his contract and, despite characterizing his claim as one for fraud, has pursued the contractual benefits Paul Revere promised him.  His claim thus

---

[11]Although an ERISA beneficiary cannot obtain punitive damages in an action for benefits, the prayer for punitive damages does not take Engelhardt's claim out of the scope of § 1132(a).  If it did, any plaintiff could thwart Congress's intent to completely preempt claims arising out of the denial of  ERISA benefits by artful pleading.  See Blackburn v. Sundstrand Corp., 115 F.3d 493, 495 (7th Cir. 1997) (complete preemption is not defeated by a plaintiff's effort to craft a claim under state law via artful pleading); see also Schmeling v. Nordam, 97 F.3d 1336, 1343 (10th Cir. 1996) (complete preemption applies even if federal remedies are not identical to the remedies available under the preempted state law cause of action).

lies at the heart of § 1132(a).[12]

Therefore, by virtue of the complete preemption doctrine, Engelhardt's state law claim must be recharacterized as an ERISA claim that was removable to federal court.

## E. The District Court Erred In Remanding Count I To State Court

In light of the foregoing discussion, we find that Count I was removed properly to federal court because it sought relief available under § 1132(a) and was thus completely preempted. In addition, we find that Count I was subject to Paul Revere's preemption defense and should have been dismissed. The district court thus erred in remanding Count I to state court.

## F. Dismissal Of Engelhardt's ERISA Claim (Count II)

After learning that Paul Revere had paid Engelhardt certain disability benefits sought in the ERISA count (Count II) of the amended complaint, the district court directed Engelhardt to file a motion for a voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(2). After the court's request, Engelhardt complied but emphasized in his motion for voluntary dismissal that the issues of attorney's fees,

---

[12]Although post-removal events do not inform our complete preemption analysis, we note that Engelhardt's suit against Paul Revere has resulted in his obtaining the contractual benefits he has been seeking.

20

interest on back benefits, and extracontractual damages had not been resolved. Engelhardt specifically requested the dismissal be "without prejudice" and "with leave to refile a claim for attorney's fees and interest or extracontractual damages (if recoverable under ERISA) in the event an agreement cannot be reached between the parties on those issues." (Engelhardt's Mot. Dismissal Count II, at 2.) Paul Revere's response to Engelhardt's motion for dismissal also highlighted the absence of resolution of important issues in both Counts I and II. Paul Revere's response noted that Paul Revere had filed a motion for summary judgment on these issues claiming that all benefits due under ERISA in Count II had been paid, that Engelhardt was not entitled to recover any extracontractual damages under Count II, and that Count I was preempted. Paul Revere's response requested that any dismissal should reflect entry of judgment in favor of Paul Revere.

Nonetheless, the district court granted Engelhardt's motion for voluntary dismissal based on what the court described as the parties' "de facto settlement." The court's order completely dismissed Count II and remanded Count I to state court. Despite the complete dismissal of Count II and remand of Count I, the court's order also stated that the court retained jurisdiction over the resolution of the issues of attorney's fees and interest claims in Count II. We review the dismissal of Count II for abuse of discretion. See Fisher v. Puerto Rico Marine Management, 940 F.2d

21

1502, 1503 (11th Cir. 1991).

The district court's directive that Engelhardt voluntarily dismiss his ERISA claim in Count II was improper. Contrary to the court's description of the procedural posture of Count II, the parties had not settled all claims in that count. There is no indication in the record that Paul Revere paid past due benefits in exchange for Engelhardt's agreement to compromise part or all of his claims for more interest, attorney's fees, or extracontractual damages in Count II. Rather, Paul Revere's payment of the past due benefits was expressly unconditional and resulted from its conclusion that the prior denial of benefits was in error. Likewise, both parties made clear to the court that serious, contested issues surrounding Engelhardt's substantial claims for more interest, attorney's fees, and extracontractual damages were unresolved. In addition to these unresolved issues, the district court did not rule on Paul Revere's motion for summary judgment on both Counts I and II.

Given the procedural posture of the case and the unresolved issues in Count II, the district court abused its discretion in dismissing Count II as settled when it was not and in attempting to retain jurisdiction over substantial unresolved issues while at the same time dismissing Count II.

### III. CONCLUSION

Therefore, we REVERSE the dismissal of Count II and VACATE the remand

of Count I to the Circuit Court of Montgomery County, Alabama. This case is REMANDED to the district court with instructions to dismiss Count I as preempted by ERISA and to consider Paul Revere's motion for summary judgment on Count II.[13]

---

[13]In ordering that the district court consider Paul Revere's motion for summary judgment on Count II, we do not imply anything about the merits of that motion.