Scott D. KRASNY, Plaintiff,

v.

Gregory WASER, Waser & Associates, Barbara Abbott, Christopher J. Prusinski, Aetna Life Insurance Company, d/b/a Aetna U.S. Healthcare, Aetna Us. Healthcare, Inc., Defendants.

No. 6:01–CV–405–ORL–31JGG.

United States District Court, M.D. Florida, Orlando Division.

June 25, 2001.

Pamela Mark Burke, Ocoee, FL, for plaintiff.

Thomas Dukes, Orlando, FL, for Gregory Waser, Waser & Assoc.

Lisa J. Augspurger, Orlando, FL, for Barbara Abbott.

Eugene L. Ciotoli, Palm Beach, FL, for Christopher J. Prusinki.

Steven M. Ziegler, Hollywood, FL, for Aetna Ins. Co.

## ORDER

PRESNELL, District Judge.

This cause came on for consideration after oral argument on Plaintiff's Motion to Remand (Doc. 15, filed April 6, 2001).

## I. Background

Plaintiff, Scott Krasny, as personal representative of the Estate of Jeannette Rosen Withrow, originally filed this action in state court against Aetna Life Insurance Company and Aetna U.S. Healthcare, Inc. (for convenience, "Aetna") and several healthcare providers. By Notice of Removal served March 27, 2001, Aetna removed the action to this Court on the grounds of ERISA preemption. Plaintiff contends that this is simply a medical malpractice case in which Aetna is vicariously liable for the negligence of its agent physicians.[1] Aetna, on the other hand, claims that the complaint calls into question the administration of its plan which thus implicates the ERISA exemption and defeats remand.

## II. The Facts

The facts alleged in the Amended Complaint may be briefly summarized as follows:

Withrow was an insured under a group health insurance plan issued by Aetna. There is no dispute that this plan is governed by the provisions of ERISA, 29 U.S.C. § 1001, et seq.

On August 17, 1998, Withrow was seen by her neurologist, Dr. Prusinski, with complaints of headaches and nausea. After examining Withrow, Prusinski ordered a STAT CT scan to determine and rule out the presence of a suspected intracranial/subarachoid hemorrhage. (Amended Complaint, ¶ 21). However, instead of immediately sending Withrow for the CT scan, Prusinski contacted Withrow's primary care physician, Dr. Waser, seeking authorization for the STAT CT scan procedure. (Amended Complaint, ¶ 24). Instead of authorizing the procedure, Waser required Withrow to appear at his office for an examination the following day. (Amended Complaint, ¶ 25).

The next day, Withrow visited Waser's office and was seen by his nurse, Barbara Abbott. For reasons which are not disclosed in the complaint, no CT scan was authorized or performed. (Amended Complaint, ¶ 27). Two days later, Withrow suffered a severe intracranial hemorrhage, which caused her death. (Amended Complaint, ¶ 28).

In his Amended Complaint, Plaintiff asserts an action "for wrongful death caused by medical malpractice". (Amended Complaint, ¶ 28). Counts I, II, and IV assert claims of negligence against Prusinski, Waser and Abbott.[2] The Plaintiff alleges that Waser and Abbott "deviated from acceptable standards of care" by, inter alia, "failing to conduct a complete examination of MS. WITHROW on August 18, 1998" (Amended Complaint, ¶ 32a, ¶ 36a) and "failing to authorize the STAT CT scan of MS. WITHROW's head as ordered by DR. PRUSINSKI" (Amended Complaint, ¶ 32b, ¶ 36b). The Plaintiff alleges that Prusinski deviated from acceptable standards of care by, inter alia, "failing to recognize the significance of new symptoms MS. WITHROW presented with on August 17, 1998" (Amended Complaint, ¶ 42a) and by "advising or permitting his employee to advise MS. WITHROW that she needed clearance and/or authorization from DR. WASER before the CT scan could be performed if it was to be paid for by Aetna" (Amended Complaint, ¶ 42d).

1. The Court expresses no view as to whether an agency relationship exists as a matter of law between Aetna and the other defendants.

2. Count III asserts a vicarious liability claim (1) against Waser and Associates, P.A., for the alleged negligence of Waser and Abbot, and (2) against Waser himself for the alleged negligence of Abbott. (Amended Complaint, ¶ 39).

In Counts V and VI of the Amended Complaint, Plaintiff seeks to hold Aetna Life Insurance Company and Aetna U.S. Healthcare, Inc., liable vicariously for the acts of Waser, Abbott and/or Prusinski. (Amended Complaint, ¶ 45.) In setting up his agency theory, Plaintiff alleges in ¶¶ 47 and 48 that:

47. Alternatively, AETNA impliedly represented to Plaintiff at all times material hereto, that DR. WASER, MS. ABBOTT and/or DR. PRUSINSKI were its agents, servants or employees by requiring her to be seen and examined by these "gatekeeping" health care providers before allowing or authorizing payment of necessary medical treatment such as the CT scan ordered by DR. PRUSINSKI.

48. At all times material hereto, Defendants DR. WASER, MS. ABBOT and/or DR. PRUSINSKI represented or impliedly represented they were the agents, servants or employees of AETNA by advising her who she had to see and/or be examined by before her CT scan would be paid for by AETNA, by advising her she was not authorized by AETNA to have the subject medical treatment until she was seen by one of these Defendants, and by interpreting her AETNA coverage in advising her of the foregoing information.

## III. Discussion

### A. Subject Matter Jurisdiction and the Well Pleaded Complaint Rule

 It is axiomatic that federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994). They possess only that power authorized by the Constitution and by statute. *Id., citing Willy v. Coastal Corp.,* 503 U.S. 131, 136–137, 112 S.Ct. 1076, 1080, 117 L.Ed.2d 280 (1992) *and Bender v. Williamsport Area School Dist.,*

475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986). These jurisdictional grants are not to be expanded by judicial decree. *Kokkonen,* 511 U.S. at 377, 114 S.Ct. 1673, *citing American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951). It is to be presumed that a cause lies outside this limited jurisdiction, *Kokkonen,* 511 U.S. at 377, 114 S.Ct. 1673, citing *Turner v. Bank of North America,* 4 U.S. (4 Dall.) 8, 11, 1 L.Ed. 718 (1799), and the burden of establishing the contrary rests upon the party asserting jurisdiction, *Kokkonen,* 511 U.S. at 377, 114 S.Ct. 1673, *citing McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 182–83, 56 S.Ct. 780, 782, 80 L.Ed. 1135 (1936).

 "Any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). District Courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In considering whether it possesses "federal question" jurisdiction over a removed case, a district court is guided by the "well-pleaded complaint rule," which provides that the plaintiff's properly pleaded complaint governs the jurisdictional determination. *See Louisville & Nashville R.R. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908). Pursuant to that rule, a case may be removed from state court based on federal question jurisdiction only when the plaintiff's statement of his own cause of action shows that it arises under federal law. *BLAB T.V. of Mobile, Inc. v. Comcast Cable Communications, Inc.,* 182 F.3d 851, 854 (11th Cir.1999) (citing *Mottley,*

211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126). Stated differently, only state-court actions that could have been filed initially in federal court may be removed.[3] *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). The presence of a federal defense does not make the case removable. *BLAB T.V. of Mobile*, 182 F.3d at 854, citing *Caterpillar*, 482 U.S. at 393, 107 S.Ct. at 2430. The well-pleaded complaint rule generally makes the plaintiff the master of the claim; in the vast majority of cases, he or she may avoid federal jurisdiction by exclusive reliance on state law. *Caterpillar*, 482 U.S. at 392, 107 S.Ct. at 2429. The issues raised in the plaintiff's complaint, not those added in the defendant's response, control the litigation. *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1486 (7th Cir.1996).

### B. Complete Preemption and Ordinary Preemption

■■ There exists, however, an independent corollary to the well-pleaded complaint rule, known as the complete preemption doctrine. Complete preemption occurs when " 'the pre-emptive force of a statute is so "extraordinary" that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.' " *Caterpillar*, 482 U.S. at 393, 107 S.Ct. at 2430. "Because they are recast as federal claims, state law claims that are held to be completely preempted give rise to 'federal question' jurisdiction." *BLAB T.V. of Mobile, Inc. v. Comcast Cable Communications, Inc.*, 182 F.3d 851, 854 (11th Cir.1999), citing *McClelland v. Gronwaldt*, 155 F.3d 507, 512 (5th Cir.1998).

■ The Eleventh Circuit Court of Appeals has recognized that "use of the term 'preemption' in this context has caused 'a substantial amount of confusion between the complete preemption doctrine and the broader and more familiar doctrine of ordinary preemption.' " *Smith v. GTE Corp.*, 236 F.3d 1292, 1313 (11th Cir.2001). *Accord, Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1486–87 (7th Cir. 1996) (stating that "use of the term 'complete preemption' is unfortunate, since the complete preemption doctrine is not a preemption doctrine but rather a federal jurisdiction doctrine").[4] Although they share similar titles, the doctrine of complete preemption and the doctrine of ordinary preemption present distinctly different issues-a difference not merely of scope but of quality. The former is used to establish a federal court's subject matter jurisdiction

---

**3.** *See* 28 U.S.C. § 1441, which governs removal to federal court, and provides in pertinent part that, except as otherwise expressly provided by an act of Congress, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

**4.** Resolution of this confusion is not aided by the fact that different courts refer to these doctrines by different names. *See, e.g., Butero v. Royal Maccabees Life Insurance Co.*, 174 F.3d 1207 (11th Cir.1999) (using terms "superpreemption" and "defensive preemption"

to refer to doctrines of "complete preemption" and "ordinary preemption", respectively), *and Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1487 (7th Cir.1996) (discussing distinctions between complete preemption and "the federal defense of preemption, known as 'conflict preemption' "), *and Lazorko v. Pennsylvania Hospital*, 237 F.3d 242 (3d Cir.2000) (contrasting complete preemption and "substantive" preemption). To minimize confusion, this opinion adopts the terminology utilized by the Eleventh Circuit in its most recent ERISA preemption decision—"complete preemption" for the jurisdictional doctrine, and "ordinary preemption" for the defensive doctrine. *See Smith v. GTE Corp.*, 236 F.3d 1292 (11th Cir.2001).

over a case, while the latter merely provides a party with an affirmative defense to a state law claim in either state or federal court. *BLAB T.V. of Mobile,* 182 F.3d at 854–55.

## C. Preemption and ERISA

■ In the context of ERISA, complete preemption results from Congress's creation of a comprehensive remedial scheme in 29 U.S.C. § 1132[5] for loss or denial of employee benefits. *Butero v. Royal Maccabees Life Ins. Co.,* 174 F.3d 1207, 1211 (11th Cir.1999) (citing *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63–64, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987)). "When Congress comprehensively occupies a field of law, 'any civil complaint raising this select group of claims is necessarily federal in character' and thus furnishes subject matter jurisdiction under 28 U.S.C. § 1331." *Id.* ERISA also gives rise to defensive preemption because of its express preemption provision, 29 U.S.C. § 1144(a), which provides that ERISA provisions "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title."[6] "State law" is defined in 29 U.S.C. § 1144(c) as including "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State."

Simply stated, then, if the Amended Complaint in this case seeks to remedy a loss or denial of employee benefits, the claim that does so is completely preempted, and removal was proper. On the other hand, if the Amended Complaint asserts only claims that "relate to" an ERISA plan, such claims are *not* completely preempted, this Court lacks jurisdiction over this dispute, and remand is required-although defensive preemption would allow the Defendant to prevail over such claims in state court.[7] *See, e.g., Kemp v. International Business Machines Corp.,* 109 F.3d 708, 713 (11th Cir.1997) ("Without any basis for federal jurisdiction over a case, a federal court cannot decide a preemption defense. Any defensive preemption arguments IBM seeks to raise will have to be decided, if at all, in state court.")

## D. Complete ERISA preemption within the Eleventh Circuit

How, then, does one determine whether the claims asserted in the instant case are subject to complete preemption?

■ "Here's the rule: ERISA super-preemption exists only when the plaintiff is seeking relief that is available under 29 U.S.C. § 1132(a)." *Butero v. Royal Maccabees Life Ins.· Co.,* 174 F.3d 1207, 1212 (11th Cir.1999) (internal quotation omitted). "Regardless of the merits of the plaintiff's actual claims (recast as ERISA

---

5. The "six carefully integrated civil enforcement provisions" of 29 U.S.C. § 1132, *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 146, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96 (1985), are too extensive to cite here in their entirety. In the context of the instant case, however, 29 U.S.C. § 1132 provides in pertinent part that "[a] civil action may be brought ... by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

6. It is undisputed that the plan at issue in this case is one of the types of employee benefit plans described in 29 U.S.C. § 1002(a) and is not one of the particular types of plans (church plans, government plans, and so forth) that are exempted from coverage under 29 U.S.C. § 1003.

7. The plaintiff, of course, asserts that the Amended Complaint neither seeks recovery for loss or denial of employee benefits nor "relates to" an ERISA plan, but the distinction will be important in assessing the cases that follow.

claims), relief is available, and there is complete preemption, when four elements are satisfied. First, there must be a relevant ERISA plan. Second, the plaintiff must have standing to sue under that plan. Third, the defendant must be an ERISA entity. Finally, the complaint must seek compensatory relief akin to that available under § 1132(a); often this will be a claim for benefits due under a plan." *Id.* (internal citations omitted).

The Eleventh Circuit has not laid down a rule for determining whether the relief sought in a complaint is "akin to that available under § 1132(a)". In the most closely analogous Eleventh Circuit case that this Court has found, *Engelhardt v. The Paul Revere Life Ins. Co.*, 139 F.3d 1346, 1353 (11th Cir.1998), the court found that the plaintiff's common law fraudulent inducement claim was completely preempted because it was "essentially a challenge to Paul Revere's refusal to pay benefits." The plaintiff had included the following language in his complaint: "As a proximate result of the fraudulent inducements by [Paul Revere], plaintiff accepted the policy. Plaintiff lost monthly disability insurance benefits and will continue to lose such benefits from January 1996 until he reaches the age of 65." *Id.* at 1354. The *Engelhardt* court noted that the plaintiff was alleging, in effect, that the measure of his compensatory damages was the amount of benefits wrongfully withheld by the insurance company. *Id.* By that measure, the plaintiff was seeking precisely that which was available under § 1132(a), not something akin to it.

In *Franklin v. QHG of Gadsden, Inc.*, 127 F.3d 1024, 1027 (11th Cir.1997), a nurse (and subsequently, the administratrix of her estate) brought various state

law claims against her employer for fraudulently inducing her to leave her former job by promising that the level of medical care provided under her former employer's medical benefits plan would continue at her new job without any reduction. After Franklin switched jobs, the level of medical benefits was reduced, and she sued, alleging fraudulent inducement as a result of "misrepresentation of material facts, suppression, deceit, and fraudulent deceit regarding the medical coverage that would be provided ... if she accepted [the] offer of employment." *Id.* Unlike the situation in *Engelhardt*, Franklin did not allege any entitlement to benefits under the new employer's ERISA plan. *Id.* at 1028. However, because determination of the merits of Franklin's claims would require a comparison of the benefits under her previous employer's medical benefits plan with those available under the new one, the court held that her claims had "a direct connection to the administration of benefits under an ERISA plan" and were therefore completely preempted. *Id.* at 1029.

The parties have not produced, and this Court has not uncovered, any case in which the Eleventh Circuit has considered whether medical malpractice claims are completely preempted by ERISA.[8] Other circuits, however, have held that at least some such claims are not.

For example, in *Dukes v. U.S. Healthcare*, 57 F.3d 350 (3d Cir.1995), the Court considered a case somewhat factually similar to the instant case and decided that ERISA preemption was not applicable. Suffering from various ailments, Darryl Dukes went to his primary care physician, who ordered that blood studies be performed. *Id.* at 352. Darryl took that

---

**8.** The Eleventh Circuit has held, however, that if a state law claim arises out of the administration of benefits under a plan, that

claim is subject to *ordinary* preemption. *See Howard v. Parisian, Inc.*, 807 F.2d 1560, 1563 (11th Cir.1987).

prescription to a hospital, which refused to perform the tests. *Id.* He then went to a different doctor, who also prescribed a blood test, which was performed by a different hospital. *Id.* Despite this, Darryl's condition worsened, and he died shortly thereafter. *Id.*

Darryl's wife, Cecelia, brought suit in state court, alleging medical malpractice and other negligence against numerous defendants, including both doctors, both hospitals, and Darryl's HMO. *Id.* According to the complaint, Darryl's blood sugar level was extremely high when he died, and the condition would have or could have been diagnosed by a timely blood test. *Id.* In regard to the HMO, Cecelia claimed that it was responsible, under a state ostensible agency theory, for the alleged negligence of the various health-care providers. *Id.* The HMO removed to federal court, arguing that Cecelia's claims, properly construed, were "directed to the structure and operation of the employer benefit plan" and were preempted by ERISA because they related to that plan. *Id.* at 353. The district court agreed, explaining that "Dukes' claims 'related to' an ERISA plan—and thus were preempted—because (1) 'any ostensible agency claim must be made on the basis of what the benefit plan provides and is therefore related to' it and (2) 'the treatment received must be measured against the benefit plan' and therefore is also 'related to' it." *Id.*, quoting *Dukes v. United States Health Care Sys., Inc.,* 848 F.Supp. 39 (E.D.Pa.1994). The district court dismissed the claims against the HMO and remanded the remaining claims to state court. *Id.*

On appeal, the Third Circuit rejected these arguments and reversed, pointing out that even if the claims related to an

ERISA plan, complete preemption did not apply:

> [T]he plaintiffs' claims, even when construed as U.S. Healthcare suggests, merely attack the quality of the benefits they received: The plaintiffs here simply do not claim that the plans erroneously withheld benefits due.[9] Nor do they ask the state courts to enforce their rights under the terms of their respective plans or to clarify their rights to future benefits. As a result, the plaintiffs' claims fall outside of the scope of [§ 1132(a) ] and these cases must be remanded to the state courts from which they were removed....

> We are confident that a claim about the quality of a benefit received is not a claim under [§ 1132(a) ] to "recover benefits due ... under the terms of [the] plan." To reach that conclusion, "we begin as we do in any exercise of statutory construction with the text of the provision in question, and move on, as need be, to the structure and purpose of the Act in which it occurs." *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 653–55, 115 S.Ct. 1671, 1676, 131 L.Ed.2d 695 (1995).

> The text lends no support to U.S. Healthcare's argument. On its face, a suit "to recover benefits due ... under the terms of [the] plan" is concerned exclusively with whether or not the benefits due under the plan were actually provided. The statute simply says nothing about the quality of benefits received.

*Id.* at 356–57.

Under the *Dukes* rationale, then, a plaintiff who seeks to hold the HMO vicari-

---

**9.** The *Dukes* court noted that the plaintiff did not allege that the hospital that refused to perform the blood test did so because the

ERISA plan refused to pay for it. *Id.* at 356–57.

ously liable for the *quality* of treatment received avoids complete preemption. *Id.* at 356–57. On the other hand, a vicarious liability claim based on a refusal to provide a benefit due under an ERISA plan *is* completely preempted. *Id.*

## IV. Application

■■■ It is undisputed that the first three elements of the *Butero* test have been met. Thus, the jurisdictional issue in this case boils down to a question of whether the plaintiff seeks relief from Aetna that is akin to the relief that is available under 29 U.S.C. § 1132(a)—in other words, whether the complaint is entirely an attack on the quality of care provided or whether, at least in part, it is an attack on a refusal to provide "benefits due … under the terms of the plan." A fair reading of the complaint shows that the Plaintiff is making both types of allegations.

With respect to Prusinski, the Amended Complaint does contain allegations attacking the quality of the medical care that he provided—for example, his alleged "fail[ure] to recognize the significance of new symptoms MS. WITHROW presented with on August 17, 1998". (Amended Complaint, ¶ 42a.) However, Prusinski's alleged malpractice also includes allegations that Prusinski misunderstood and misapplied the Aetna plan—for example, that he advised Withrow that she needed clearance or authorization from Waser before Aetna would pay for the CT scan. (Amended Complaint, ¶ 42d.) This latter allegation cannot fairly be described as solely an attack on the quality of the medical care Prusinski provided. In effect, it is an allegation that Withrow was denied a plan benefit to which she was entitled. Similarly, the Amended Complaint contains allegations of substandard medical

care on the parts of Abbott and Waser. However, the Plaintiff's additional allegations that Abbott and Waser "fail[ed] to authorize the STAT CT scan of MS. WITHROW's head as ordered by DR. PRUSINSKI," (Amended Complaint, ¶ 32b, ¶ 36b) move the allegations against them out of the "pure" medical malpractice arena and into the realm of an ERISA denial-of-benefits claim.

Finally, Counts V and VI of the Amended Complaint contain allegations that Aetna and Aetna, Inc., respectively, are vicariously liable for "the acts" of their agents—Waser, Abbott and Prusinski. (Amended Complaint, ¶ 45, ¶ 50.) Because "the acts" include a denial of benefits due under an ERISA plan—and not solely substandard medical treatment—the Court concludes that the Plaintiff has asserted claims for relief that is "akin to" the relief available under 29 U.S.C. 1132(a) "to recover benefits due … under the terms of [the] plan". Such claims are completely preempted, giving rise to federal question jurisdiction. Removal was therefore proper.

In consideration of the foregoing, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's Motion to Remand (Doc. 15) is **DENIED.**

**DONE** and **ORDERED** in Chambers, Orlando, Florida this __ day of June, 2001.