Annette BUTERO, Simply Fashion Stores Inc., et al., Plaintiffs-Appellants,

v.

ROYAL MACCABEES LIFE INSURANCE COMPANY, a corporation, Anita Lawson, Defendants-Appellees.

No. 97-6536.

United States Court of Appeals,

Eleventh Circuit.

May 10, 1999.

Appeal from the United States District Court for the Northern District of Alabama. (No. CV 97-L-328-S), Seybourn H. Lynne, Judge.

Before COX and BIRCH, Circuit Judges, and GODBOLD, Senior Circuit Judge.

COX, Circuit Judge:

Annette Butero, Simply Fashion Stores, Ltd., and its general partner Simply Fashion Stores, Inc. appeal two district court orders: one refusing to remand to state court their claims against Royal Maccabees Life Insurance Company and its employee Anita Lawson, and another dismissing their complaint in its entirety. We affirm.

I. BACKGROUND

Simply Fashion provides its employees a cafeteria plan that makes available health, life, and long-term disability insurance, as well as a 401(k) retirement savings plan. In early 1996, Simply Fashion learned that its life-insurance carrier would cancel the group policy that Simply Fashion offered to its employees. Simply Fashion's human resource director met with an independent insurance agent, who notified Simply Fashion that Royal Maccabees would provide Simply Fashion a replacement policy at the same premium as the prior insurer. According to the agent, the replacement policy would have a portability feature.

Based on this information, Simply Fashion issued a memorandum to its full-time employees. The memo announced that "our life insurance coverage" would be provided by a new carrier starting on a certain date, and that employees insured by the old carrier would be automatically "enrolled." (Supp. R.-25 Ex. 6.)

Employees would pay the entire premium by payroll deduction, as they had in the past. Full-time employees with 90 days' tenure who were not enrolled under the old policy were invited to enroll. The attached "Special Open Enrollment" form under the "Simply Fashion Stores, Ltd. Cafeteria Plan" required employees to acknowledge that they had received a "Summary Plan Description." (*Id.*) That summary plan description, also attached to the memo, identified the benefits provided under the life-insurance policy ($50,000) and who was eligible (full-time employees with 90 days' tenure). The enrollment form also warned employees that "[t]he Plan Administrator may reduce or cancel my compensation reduction or otherwise modify this agreement in the event he believes it advisable in order to satisfy certain provisions of the Internal Revenue Code." (*Id.* Ex. 5.) The form contained a signature space at the bottom to indicate that the enrollment was "[a]ccepted and agreed to by the Company's Authorized Representative." (*Id.*)

As it turned out, Royal Maccabees would not provide a portable policy to Simply Fashion at the same premium as the old policy. Despite its representations to its employees, Simply Fashion opted for a cheaper, nonportable policy. Although, according to the insurance agent and the Complaint, "other insurance companies offering coverage could have been purchased by Simply Fashions," (Supp. R.-25 Ex. 4), Simply Fashion stayed with Royal Maccabees.

The Royal Maccabees policy that Simply Fashion procured was one that was issued to Simply Fashion, and not to Simply Fashion's employees. Royal Maccabees advised Simply Fashion on administration of the policy and on premium billing. Simply Fashion was also responsible for providing Royal Maccabees with documentation supporting a claim. Simply Fashion began collecting premiums from its employees, and it remitted two premium checks to Royal Maccabees.

After the policy's putative effective date, Royal Maccabees asked Simply Fashion to provide a "statement from the company that there had been no deaths or disabilities since the effective date." (Supp. R.-25 Ex. 4.) Over a month later, Simply Fashion did so, after a fashion: it informed Royal Maccabees that from the effective date of the policy to the day before the letter's date, "we have had no death claims." (*Id.*

2

Ex. 7.) The letter said nothing about disability. This omission was arguably important, because a month earlier one of Simply Fashion's warehouse managers, Benedict Butero, had taken leave due to a severe illness. Butero had been automatically enrolled for the insurance because he had elected to purchase the life insurance that Simply Fashion had previously offered. The day after Simply Fashion informed Royal Maccabees that there were no outstanding death claims, Butero died.

The day Butero died, Royal Maccabees sent Simply Fashion a letter stating that Royal Maccabees was "declin[ing] your request for coverage" and that "[n]o contract of insurance exists." (Supp. R.-25 Ex. 8.) The letter was accompanied by a check reimbursing Simply Fashion for the paid premiums. The letter did not explain why Royal Maccabees rejected the policy application, although Royal Maccabees now argues that it was because Simply Fashion provided no information about disabled employees.

A few days later, Annette Butero, Benedict's wife, made a claim for benefits through Simply Fashion. The claim was denied. This lawsuit followed.

Butero, joined by Simply Fashion, sued in state court, naming as defendants Royal Maccabees, its employee Anita Lawson, and the independent insurance agent. The complaint—a classic "shotgun" pleading—joins every defendant in every count, and it seeks unspecified compensatory damages for breach of contract, bad faith refusal to pay, and fraud in the inducement; it also includes three counts alleging fraud that are apparently duplicative. The defendants removed the action to federal court, asserting that the insurance policy was part of a plan governed by the Employee Retirement Income Security Act of 1974.

The plaintiffs then moved to remand, arguing that the insurance policy was not part of an ERISA plan, and in the alternative that the claims against the insurance agent were not preempted by ERISA. The court apparently rejected the first argument, but agreed with the second: the claims against the independent insurance agent were severed and remanded. The court otherwise denied the motion to remand.

The remaining defendants, Royal Maccabees and Anita Lawson, then moved to strike the plaintiffs' state-law claims. Royal Maccabees argued that ERISA governed the insurance policy, and that all the

3

remaining state-law claims were preempted. The district court agreed. It issued a one-page order dismissing the complaint without prejudice to the right to refile a complaint stating claims under ERISA.

The plaintiffs appeal and challenge the district court's orders on two grounds. First, they argue that the insurance policy is not part of an ERISA plan because it is anchored in a regulatory safe harbor from ERISA for certain "group or group-type insurance program[s]." 29 C.F.R. § 2510.3-1(j). Second, they contend that even if the policy is part of an ERISA plan, their causes of action are not preempted under the principles enunciated in *Morstein v. National Ins. Servs., Inc.,* 93 F.3d 715, 722 (11th Cir.1996) (en banc). We review de novo both the denial of the motion to remand and the dismissal. *See Whitt v. Sherman Int'l Corp.,* 147 F.3d 1325, 1329 (11th Cir.1998); *Hall v. Blue Cross/Blue Shield,* 134 F.3d 1063, 1064-65 (11th Cir.1998).

## II. DISCUSSION

Reviewing the two district court orders at issue here requires juggling two different kinds of ERISA preemption. The first kind is what this circuit has called complete preemption or "super preemption." *Whitt v. Sherman Int'l Corp.,* 147 F.3d 1325, 1329 (11th Cir.1998). Superpreemption arises from Congress's creation of a comprehensive remedial scheme in 29 U.S.C. § 1132 for loss or denial of employee benefits. *See Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63-64, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). When Congress comprehensively occupies a field of law, "any civil complaint raising this select group of claims is necessarily federal in character" and thus furnishes subject-matter jurisdiction under 28 U.S.C. § 1331. *Id.* Therefore, federal courts have subject-matter jurisdiction over state-law claims that have been superpreempted, and defendants may remove to federal court those actions that contain such claims. *See id.* There being no other basis for subject-matter jurisdiction here, whether the district court properly denied the motion to remand for lack of removal jurisdiction thus turns on whether some or all of the state-law claims are superpreempted.

4

The second kind of preemption we will call "defensive." It originates in ERISA's express preemption provision, 29 U.S.C. § 1144(a).[1] Defensive preemption provides only an affirmative defense to certain state-law claims. *See id.* As an affirmative defense, defensive preemption does not furnish federal subject-matter jurisdiction under 28 U.S.C. § 1331; "a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Id.* at 63, 107 S.Ct. at 1546. On the other hand, defensive preemption does require dismissal of state-law claims. *See id.* Reviewing the district court's dismissal of the complaint therefore raises only the question of whether the state-law claims were subject to *defensive* preemption.

We start with the superpreemption issue because, for the reasons explained above, it ultimately decides the existence of federal subject-matter jurisdiction. As it turns out, some claims are superpreempted, and others are not. Here's the rule: ERISA superpreemption exists only when the "plaintiff is seeking relief that is available under 29 U.S.C. § 1132(a)." *Whitt,* 147 F.3d at 1330. Regardless of the merits of the plaintiff's actual claims (recast as ERISA claims), relief is available, and there is complete preemption, when four elements are satisfied. First, there must be a relevant ERISA plan. *See id.; Kemp v. International Business Machs. Corp.,* 109 F.3d 708, 713 (11th Cir.1997). Second, the plaintiff must have standing to sue under that plan. *See Engelhardt v. Paul Revere Life Ins. Co.,* 139 F.3d 1346, 1350 n. 3 (11th Cir.1998). Third, the defendant must be an ERISA entity. *See id.; Franklin v. QHG of Gadsden, Inc.,* 127 F.3d 1024, 1029 (11th Cir.1997); *see also Morstein v. National Ins. Servs., Inc.,* 93 F.3d 715, 722 (11th Cir.1996) (en banc) (no preemption at all—not even defensive preemption—when the defendant is "a non-ERISA entity" and the claims do not "affect relations among principal ERISA entities as such"). Finally, the complaint must seek compensatory relief akin to that available under § 1132(a); often this will be a claim for benefits due under a plan. *See Engelhardt,* 139 F.3d at 1354; *Franklin,* 127 F.3d at 1029.

---

[1]"[T]he provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C. § 1144(a).

The claims in this complaint that are not superpreempted are those brought by Simply Fashion. The second element, standing to sue under ERISA, is missing: Simply Fashion's role on ERISA's stage is "employer." *See* 29 U.S.C. § 1002(5). Section 1132(a) grants employers no cause of action for damages. *See* 29 U.S.C. § 1132(a). Simply Fashion thus has no standing to assert a statutory cause of action. *See Engelhardt,* 139 F.3d at 1351. Hence, Simply Fashion's claims are not superpreempted.

Butero's claims, on the other hand, are superpreempted. To begin with, the second, third, and fourth elements are plainly present. First, if the life insurance policy is part of an ERISA plan (more on that below), then she is a potential beneficiary. *See* 29 U.S.C. § 1002(8) (" '[B]eneficiary' means a person designated by a participant ... who is or may become entitled to a benefit thereunder."). She thus has standing to assert a variety of claims under § 1132(a). *See* 29 U.S.C. § 1132(a)(1), (2), (3), (4); *Engelhardt,* 139 F.3d at 1351. Second, if we have an ERISA plan, Royal Maccabees[2] is an ERISA entity. It could "control ... the payment of benefits" and the "determination of [Butero's] rights" under any plan we may have here.[3] *Morstein,* 93 F.3d at 723. Third, the damages apparently sought here are available under § 1132: we have held that claims against an insurer for fraud and fraud in the inducement to purchase a policy are in essence claims "to recover benefits due to [the beneficiary] under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B); *see Engelhardt,* 139 F.3d at 1353 (fraud in the inducement is claim for benefits under § 1132(a)(1)); *Franklin,* 127 F.3d at

---

[2]As we mentioned earlier, the plaintiffs sued both Royal Maccabees and one of its employees, Anita Lawson. Arguably, the claims against Anita Lawson would not be superpreempted because of element three of our four-part test: Lawson is probably not an ERISA entity. We have found no authority on this precise question, and the parties have cited none—the parties in fact ignore that Lawson has been sued at all. (There are cases concerning *independent* insurance agents, but not mere employees of insurance companies.) But we decline to hold that claims against an ERISA entity's employee escape the preemption that would doom state-law claims against the entity itself. Such a holding would reduce all of ERISA's preemptive scope to nothing but a trap for an artless pleader.

[3]We note that *Franklin* suggests in dicta (since the issue was not before it) that an insurance company allegedly obligated to pay benefits under a plan is not considered an ERISA entity if the complaint alleges pre-policy fraud. *See Franklin,* 127 F.3d at 1029. No one has argued that this dictum governs this case, and we doubt that ERISA status can be so cleanly switched on and off. After all, we aren't here today solely because of any fraud; we're here because Butero thinks she is due benefits under an ERISA plan. The benefits were denied by the insurer in its status as an ERISA entity.

6

1029 (claim based on alleged misrepresentation that certain coverage would exist is claim for benefits).  And the claims here of bad faith refusal to pay and breach of contract both pursue the same relief as the fraud claims—payment of the life insurance benefit.  *Cf. Engelhardt,* 139 F.3d at 1354.  We therefore conclude that all of Butero's claims are properly recast as claims for benefits due under any plan.

That leaves only the first element to discuss—whether there is a relevant ERISA plan.  The centerpiece of the plaintiffs' argument on this point is a regulatory safe harbor from "plan-ness," 29 C.F.R. § 2510.3-1(j), and it is there that we start.  The regulation excepts from the definition of "employee welfare benefit plan" certain "group or group-type insurance program[s]" "offered by an insurer to employees."  29 C.F.R. § 2510.3-1(j).  For the program to qualify for the exception, four elements must be satisfied:

> (1) No contributions are made by an employer or employee organization;
>
> (2) Participation [in] the program is completely voluntary for employees ...;
>
> (3) The sole functions of the employer ... with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer;  and
>
> (4) The employer ... receives no consideration in the form of cash or otherwise in connection with the program....

*Id.* There is no dispute here that elements (1), (2), and (4) are fulfilled.  Element (3) is in dispute, but it is hard to see why.  The regulation explicitly obliges the employer who seeks its safe harbor to refrain from *any* functions other than permitting the insurer to publicize the program and collecting premiums. Simply Fashion did a lot more.  It picked the insurer;[4]  it decided on key terms, such as portability and the amount of coverage;  it deemed certain employees ineligible to participate;  it incorporated the policy terms into the self-described summary plan description for its cafeteria plan;  and it retained the power to alter compensation reduction for tax purposes.  So the safe harbor is barred.  But that does not necessarily mean that the insurance policy is part of an ERISA plan.  *See, e.g., Brundage-Peterson v. Compcare Health Servs. Ins. Corp.,* 877

---

[4]We do not hold here, because the question is not presented, that picking an insurer by itself could move an employer out of the safe harbor.

F.2d 509, 511 (7th Cir.1989). So we turn next to the high-seas definition of an "employee welfare benefit plan" to see if the insurance policy here qualifies.

For present purposes, an "employee welfare benefit plan" governed by ERISA is any (1) "plan, fund or program," (2) established or maintained (3) by an employer, (4) to provide beneficiaries (5) death benefits through an insurance policy. 29 U.S.C. § 1002(1); *see also Donovan v. Dillingham,* 688 F.2d 1367, 1371 (11th Cir.1982) (en banc) (breaking up the statutory definition into elements). Elements (3), (4) and (5) are undisputedly satisfied. We conclude that the other two elements are satisfied, as well.

First, we have a "plan." An ERISA plan exists whenever there are "intended benefits, intended beneficiaries, a source of financing, and a procedure to apply for and collect benefits." *Donovan,* 688 F.2d at 1372. The intended benefits here were those paid if an employee dies. The intended beneficiaries were those named by the employee. Financing was provided by the employee through payroll deductions. And a "reasonable person" could figure out procedures for receiving benefits (certainly Butero did here, for Simply Fashion filed an insurance claim on her behalf). *See id.* at 1373.

Second, the plan was "established or maintained." A plan is "established" when there has been some degree of implementation by the employer going beyond a mere intent to confer a benefit. *See Whitt,* 147 F.3d at 1331; *Donovan,* 688 F.2d at 1373 ("Acts or events that record, exemplify or implement the decision will be direct or circumstantial evidence that the decision has become reality—*e.g.,* financing or arranging to finance or fund the intended benefits, establishing a procedure for disbursing benefits, assuring employees that the plan or program exists—but it is the reality of a plan ... and not the decision to extend certain benefits that is determinative."). Such implementation happened here. Simply Fashion consulted an insurance agent, selected the terms of the group policy it wished to purchase for its employees, completed an application form for the policy, solicited enrollments from its employees, collected money through payroll deductions, and remitted premium checks to Royal Maccabees. These actions on Simply Fashion's part take the implementation of its plan sufficiently beyond that in cases where no establishment occurred. *Compare*

8

*Whitt,* 147 F.3d at 1331 (asserted "plan" was no more than several draft plans), *with Kenney v. Roland Parson Contracting Corp.,* 28 F.3d 1254, 1258 (D.C.Cir.1994) ("plan" "established" when employer represented to employees that contributions were being made to pension fund, and plan documents were prepared, even though no contributions were ever made).

One might argue, on the other hand, that Royal Maccabees' retroactive refusal to issue the policy precludes any plan from being "established." We reject this argument for two reasons.[5] First, whether a plan is "established" is determined by the *employer's* conduct, not that of any other ERISA entity. The statutory definition makes it clear that only an employer can establish an "employee welfare benefit plan," *see* 29 U.S.C. § 1002(1), and caselaw glosses on the definition have likewise focused on the employer's actions. *See Kenney,* 28 F.3d at 1258 (describing seven-factor test for establishment, including: (1) the employer's representations in internally distributed documents; (2) the employer's oral representations; (3) the employer's establishment of a fund to pay benefits; (4) actual payment of benefits; (5) the employer's deliberate failure to correct known perceptions of a plan's existence; (6) the reasonable understanding of employees; and (7) the employer's intent); *Henglein v. Informal Plan for Plant Shutdown Benefits for Salaried Employees,* 974 F.2d 391, 400 (3d Cir.1992); *see also Donovan,* 688 F.2d at 1367. Second, the facts-and-circumstances standard for whether a plan has been "established" has many factors other than payment of actual benefits. Thus, the facts that an employer represented to employees that life insurance was available, took payroll deductions to pay premiums, in fact paid premiums, and obviously intended for life insurance to take effect can trump the underwriter's rejection of an application nearly two months after coverage putatively began. For these reasons, we conclude that the insurance policy was part of an

---

[5]Our explicit conclusion here was reached implicitly by the panel in *Willett v. Blue Cross & Blue Shield,* 953 F.2d 1335 (11th Cir.1992). The *Willett* plaintiffs were putative beneficiaries of a health insurance policy that the insurer retroactively canceled as of its effective date, thus leaving the plaintiffs uncovered for care they had received during the time the policy had purported to be in effect. The plaintiffs sued the insurer for benefits. Not only did this court *not* hold that the ineffectiveness of the policy took it outside ERISA; it also held that the plaintiffs had a potential claim against the insurer notwithstanding the cancellation of the policy. *See id.* at 1342-43.

"employee welfare benefit plan" governed by ERISA. That means that we have a relevant ERISA plan, and that all the elements of superpreemption are satisfied for Butero's claims.

So we conclude that all of Simply Fashion's claims escape superpreemption, while Butero's claims fall to it. The upshot of this conclusion is that the district court properly denied the motion to remand. Removal jurisdiction exists over the action by virtue of the superpreemption of Butero's claims. Because Simply Fashion's claims were joined with superpreempted (and therefore removable) claims, furthermore, the district court could properly retain jurisdiction over them. *See* 28 U.S.C. § 1441(c); *see In re City of Mobile,* 75 F.3d 605, 608 (11th Cir.1996). The question of the court's jurisdiction thus resolved, we turn to whether the district court properly dismissed the plaintiffs' claims as defensively preempted.

Defensive preemption defeats claims that seek relief under state-law causes of action that "relate to" an ERISA plan. 29 U.S.C. § 1144(a); *Lordmann Enters. v. Equicor, Inc.,* 32 F.3d 1529, 1532 (11th Cir.1994). It has long been settled that claims such as Simply Fashion's "relate to" an ERISA plan. *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47-48, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987) (state-law bad faith, breach of contract, and fraud claims are all preempted under § 1144(a)). Butero's claims are defensively preempted, as well: If the plaintiff's claims are superpreempted, then they are also defensively preempted. *See McClelland v. Gronwaldt,* 155 F.3d 507, 517 (5th Cir.1998). The district court thus properly dismissed both plaintiffs' claims with leave to refile.

III. CONCLUSION

For the foregoing reasons, we affirm the district court's orders.

AFFIRMED.