Noel BOONE, Plaintiff,

v.

HEALTH STRATEGIES, INC.,
et al., Defendants.

Pamela Ingram, Plaintiff,

v.

Health Strategies, Inc.,
et al., Defendants.

Glenn Britton, Plaintiff,

v.

Health Strategies, Inc.,
et al., Defendants.

Janet Matthews, Plaintiff,

v.

Health Strategies, Inc.,
et al., Defendants.

Nos. Civ.A. 01–T–445–E to
Civ.A. 01–T–448–E.

United States District Court,
M.D. Alabama,
Eastern Division.

July 31, 2002.

W. Lee Pittman, J. Chris Cochran, Pittman, Hooks, Dutton, Kirby & Hellums, PC, Birmingham, AL, Timothy Bledsoe Davis, Davis & Davis, LLC, Alexander City, AL, for Plaintiffs.

Thomas A. Kendrick, Matthew W. Robinett, Norman, Wood, Kendrick & Turner, Birmingham, AL, for Health Strategies, Inc.

Emily Sides Bonds, David B. Walston, Jerry Dean Hillman, J. David Moore, Walston, Wells, Anderson & Bains, LLP, Birmingham, AL, Roger S. Morrow, Joel Hartley Pearson, Wesley Romine, Chandra C. Wright, Morrow, Romine & Pearson, PC, Montgomery, AL, for Defendants.

## ORDER

MYRON H. THOMPSON, District Judge.

These lawsuits proceed against defendant Health Strategies, Inc. and others for their alleged failure to properly reimburse plaintiffs Noel Boone, Glenn Britton, Pamela Ingram, and Janet Matthews for their insured medical expenses. The plaintiffs originally filed their cases in the Circuit Court of Tallapoosa County, Alabama, alleging state-law claims of breach of contract, fraud, bad faith, and civil conspiracy, among other counts. The defendants removed to this court, as they contend that plaintiffs' state-law claims are completely preempted by the provisions of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.A. §§ 1001–1461. Currently before the court are several motions centering on the applicability of ERISA to the facts of this dispute: motions to dismiss the state-law claims and strike the jury demand, filed by the defendants, and motions to remand the case to state court, filed by the plaintiffs. For the reasons that follow, the cases will remain in federal court and must be recast as claims under ERISA or dismissed.

## I. STANDARD OF REVIEW

■ In a removal action, the defendant has the burden to plead the basis for jurisdiction. *Fowler v. Safeco Ins. Co. of America*, 915 F.2d 616, 617 (11th Cir.1990). A defendant may submit affidavits, depositions, or other evidence to support removal. *Fowler*, 915 F.2d at 617.

The evidence before the court is disputed by the parties, but is only in the form of affidavits, depositions, and documents. In resolving these disputed factual matters, the court has therefore not had the benefit of live testimony. In view of the posture in which the evidence has been presented to the court and in view of the principle that "where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand," *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir.1994); *cf. Taylor*, 481 U.S. at 67, 107 S.Ct. at 1548 (Brennan, J., concurring) ("the prudent course for a federal court that does not find *clear* congressional intent to create removal jurisdiction will be to remand to state court") (emphasis in original), the court finds the facts in favor of the plaintiffs.

## II. RELEVANT FACTS

The plaintiffs are hairstylists who worked at Master's Touch, a hair salon, but, according to the plaintiffs, they were not employees of Master's Touch, nor were they independent contractors working for Master's Touch. Rather, each of the plaintiffs (with the exception of Britton who had additional duties described below) operated his or her own independent business, each directly received payment from his or her clients, and each paid rent to the owner of Master's Touch for the privilege of conducting his or her independent business at that location. They did not work under the control of Master's Touch, but set their own hours, maintained their own

appointment book, and purchased their own supplies and equipment. Boone, Ingram, and Matthews received no bonuses, wages, or benefits from Master's Touch, and were not treated as an employee of Master's Touch for tax purposes.

Master's Touch is wholly owned by Priscilla Mathis, but Mathis was not involved in the day-to-day business of the company. Rather, Britton, her son, was trained to perform and did perform a variety of managerial tasks at Master's Touch, including initiating oral leases with new hairdressers for space at Master's Touch, collecting the rent from the hairdressers each week, overseeing the cleaning, and doing some of the accounting work. He was paid a substantial sum of money by Master's Touch for these services. Britton admits that he could be fired from Master's Touch "if my mom got disappointed in me." Britton does pay $100 per week to Master's Touch as rent for his hairdresser station.

A customer apparently heard the hairstylists talking one day about needing health insurance. In response to that conversation, Buck King, an insurance agent, came by Master's Touch with a proposal. Following this proposal, Britton, acting on behalf of Master's Touch, paid a membership fee to become a member of the American Hospitality Association (AHA), an association of businesses engaged in or associated with the hospitality and tourism industries created for the purpose of furthering the collective interests of those businesses. Membership in the AHA allowed a business to offer its employees a group health insurance plan (AHA Plan). Individuals or businesses that do not pay the membership fee to AHA cannot obtain AHA Plan health insurance coverage. Nor can the AHA Plan be legitimately extended to anyone who is not an employee of the member business.

Master's Touch completed an AHA Group Health Plan Company Participation Agreement, listing itself as the "Employer" of several "Eligible Employees." The plaintiffs, listed as eligible employees, all submitted enrollment forms to participate in the AHA Plan, and each was granted coverage under the plan. Matthews, Ingram, and Boone indicated on the enrollment form that Master's Touch was their employer, while Britton indicated that he was self-employed. Matthews, Ingram, and Boone pay their own insurance-coverage premiums to Master's Touch, whereupon a single check drawn on the company account is then sent to the insurance company. However, Master's Touch directly pays Britton's health insurance premiums.

According to the plaintiffs, who now seek to avoid ERISA preemption and to remand this case to state court, King and the hairstylists created the fiction of an employee-employer relationship in order for King to offer and the plaintiffs to obtain health coverage under the AHA Plan. King knew that the AHA Plan required membership in AHA, and, though he knew the hairstylists were in reality operating their own individual businesses, he fostered the facade of an employee-employer relationship between Master's Touch and the hairstylists in order to provide them coverage, a facade in which the hairstylists happily participated.

### III. SUPERPREEMPTION

A lawsuit may be properly removed to federal court if it is a case "arising under" the laws of the United States pursuant to 28 U.S.C.A. §§ 1441, 1331. Ordinarily, a cause of action arises under federal law only when a plaintiff's "well-pleaded complaint" raises a federal question. *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 65–67, 107 S.Ct. 1542, 1548–49, 95 L.Ed.2d 55 (1987). The Supreme Court has determined, however, that the uniform regulatory scheme established by

ERISA "so completely preempt[s]" the area of employee benefit plans that an ERISA preemption defense to a state-law claim provides a sufficient basis for removal of the lawsuit to federal court, notwithstanding the traditional limitation imposed by the well-pleaded complaint rule. *Id.* at 64–67, 107 S.Ct. at 1546–48. Thus, if a plaintiff's state-law claim "relates to" an ERISA plan within the meaning of ERISA's preemption provision, 29 U.S.C.A. § 1144(a), the claim is preempted by ERISA and converted to a federal claim for the purposes of removal jurisdiction. *Id.* at 60, 66, 107 S.Ct. at 1544, 1547–48. This effect is commonly known in this circuit as ERISA "superpreemption," *Butero v. Royal Maccabees Life Ins. Co.,* 174 F.3d 1207, 1211–12 (11th Cir.1999), as compared with ERISA "defensive preemption," in which state-law claims, once properly asserted in federal court, might be dismissed or recast as claims under ERISA. *Id.*

■ ERISA superpreemption applies if four elements are satisfied: (1) there must be a relevant ERISA plan, (2) the plaintiff must have standing to sue under that plan, (3) the defendant must be an ERISA entity, and (4) the complaint must seek compensatory relief similar to that available under ERISA. *Butero,* 174 F.3d at 1212. No serious dispute in this case surrounds the last three requirements for superpreemption; that is, if there is a relevant ERISA plan, the plaintiff would be a beneficiary of that plan with standing to sue under ERISA, the defendant would be an ERISA entity, and the complaint would seek ERISA-type damages. *Butero,* 174 F.3d at 1212–13. Rather, the contested requirement is the existence of a relevant ERISA plan.

An ERISA plan means either an "employee welfare benefit plan" or an "employee pension benefit plan." 29 U.S.C.A. § 1002(3). An "employee welfare benefit plan," the only one of the two types of ERISA plans relevant in this case, is defined as

> "any plan, fund, or program ... established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise ... medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death, or unemployment...."

29 U.S.C.A. § 1002(1). In *Donovan v. Dillingham,* 688 F.2d 1367, 1371 (11th Cir. 1982) (en banc), the Eleventh Circuit separated this statutory definition of "employee welfare benefit plan" into the following five requisite elements: (1) a "plan, fund, or program," (2) established or maintained, (3) by an employer or by an employee organization, or by both, (4) for the purposes of providing medical, surgical, hospital care or a variety of other benefits, (5) to participants or their beneficiaries. *See also Slamen v. Paul Revere Life Ins. Co.,* 166 F.3d 1102, 1104 (11th Cir.1999). Only two of these five elements are challenged in this case.

### A. "Established or Maintained"

■ The plaintiffs contend that the second element for an ERISA plan is not present; they argue that Master's Touch did not "establish or maintain" the plan. According to the Eleventh Circuit in *Butero v. Royal Maccabees Life Ins. Co.,* 174 F.3d 1207, 1214 (11th Cir.1999), "[a] plan is 'established' when there has been some degree of implementation by the employer going beyond a mere intent to confer a benefit." The question of whether a employer has done enough to be considered to have "established or maintained" the plan is highly fact-specific. For example,

in *Butero,* the employer was found to have "established" a plan when it "consulted an insurance agent, selected the terms of the group policy it wished to purchase for its employees, completed an application form for the policy, solicited enrollments from its employees, collected money through payroll deductions, and remitted premium checks to [the insurance company]." *Id.* In *Randol v. Mid–West Nat. Life. Ins. Co. of Tenn.,* 987 F.2d 1547, 1551 (11th Cir. 1993), an employer "maintained" a plan when it "wrote the first check purchasing the policies, established a system whereby the premiums would be paid monthly by means of a bank draft on the corporate account, contributed $75 per employee per month toward the premiums, and collected from the employees the balance of the premiums through a withholding system," all coupled with a subjective intent to "facilitate his employees' obtaining health coverage."

The plaintiffs argue that the actions of Master's Touch do not meet the level of participation necessary to find that it "established" or "maintained" the plan. According to plaintiffs, Master's Touch served as only a conduit for payment of the premiums. They maintain that it did not establish the plan because the hairdressers independently and without authority decided to use the Master's Touch name to obtain their individual insurance coverage.

Contrary to the plaintiffs' argument, Master's Touch has a level of involvement in the establishment and maintenance of this plan that meets this element. It paid $250 to become a member of AHA in order to offer this plan to the hairdressers. It paid 100% of Britton's premiums to the insurance company each month, and collected the premiums each month from the rest of the hairdressers and submitted the entire amount via a single check drawn on the corporate account to the insurance

company. Also and quite possibly, the court should, but need not, consider the complicity of the Master's Touch manager, Britton, in allowing the hairdressers to claim to be employees of Master's Touch in order to obtain coverage; the participation in this scheme certainly raises the level of Master's Touch's participation such that it can be said to have "established" or "maintained" the plan.

The plaintiffs contend that Britton did not have the authority to enter into a contract with AHA or to offer a group insurance policy to the hairdressers without the express consent of Priscilla Mathis, the sole owner of Master's Touch. However, because Britton clearly was entrusted with unsupervised managerial responsibility in other areas of the business, specifically those areas involving the collection of money and payment of independent contractors, such as the cleaning staff, the court finds that Britton had at least apparent authority to enter into this agreement with AHA for the provision of a group insurance policy to the hairdressers.

### B. "By An Employer"

In order for superpreemption to provide jurisdiction, there must actually be an ERISA plan, which necessarily means that there must be an actual employer that establishes or maintains a plan for some actual employees. *Donovan,* 688 F.2d at 1371 (stating that "[t]he gist [of ERISA] is that a plan, fund, or program falls within the ambit of ERISA only if the plan, fund, or program covers ERISA participants because of their employee status in an employment relationship, and an employer or employee organization is the person that establishes or maintains the plan, fund, or program."). "Thus, in order to establish an ERISA employee welfare benefit plan, the plan must provide benefits to at least one employee, not including an employee who is also the owner of the business in

question." *Slamen v. Paul Revere Life Ins. Co.*, 166 F.3d 1102, 1104 (11th Cir. 1999).

The plaintiffs contend that Master's Touch is not their employer. They argue that the fact that the hairstylists made misrepresentations in order to obtain group health coverage by creating the facade of being employees of Master's Touch is not relevant to the superpreemption question. The court agrees that, while the misrepresentations of the hairdressers may well be relevant to the proper disposition of their claims against the defendants, those misrepresentations, because of the facts presented here, are not essential in determining whether the hairdressers are, in fact, employees of Master's Touch, and, correspondingly, in determining this court's power to hear the case.

■ However, an ERISA plan is created where even *one* actual employee is covered by the plan, in which case the existence of other beneficiaries of the plan who are not employees will not change the basic ERISA character of the plan. *See* 29 C.F.R. § 2510.3–3(b) ("A Keogh plan under which one or more common law employees, in addition to the self-employed individuals, are participants covered under the plan, will be covered [by ERISA]."); *Slamen,* 166 F.3d at 1104. When an ERISA plan is found to exist, the rights and remedies of all of the plan's participants and beneficiaries, whether employees or non-employees, are governed by ERISA. *Gilbert v. Alta Health & Life Ins. Co.*, 276 F.3d 1292, 1303–04 (11th Cir. 2001) (citing *Madonia v. Blue Cross & Blue Shield of Va.*, 11 F.3d 444, 450 (4th Cir.1993)). This court thinks it abundantly clear from Britton's deposition testimony that he fits the common-law mold of an employee of Master's Touch: he receives a salary for his services, acts on behalf of and under the direction of the owner by exercising day-to-day managerial responsi-

bility, and may be fired if the owner disapproves of his actions. Therefore, because the AHA plan covers at least one actual employee of Master's Touch, Britton, the plan is indeed maintained or established "by an employer." Therefore, all the elements of an "ERISA plan" are present, and, consequently, all requirements for proper ERISA superpreemption are met. Removal of this case from state court was proper.

## IV.  DEFENSIVE PREEMPTION

■ The defendants have moved to strike the plaintiffs, state-law claims. Resolution of the issue of whether the plaintiffs' state-law claims should be stricken turns on whether those claims are defensively preempted by ERISA. "Defense preemption defeats claims that seek relief under state-law causes of action that 'relate to' an ERISA plan." *Butero,* 174 F.3d at 1215 (quoting 29 U.S.C.A. § 1144(a)). Consequently, state-law claims that are defensively preempted by ERISA must be dismissed. *Id.* at 1212. In *Butero,* the Eleventh Circuit held that the plaintiff's state-law claims of breach of contract, fraud, and bad faith "relate to" an ERISA plan. *Id.* at 1215. (citing *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47–48, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987)). The *Butero* court reasoned that "[i]f the plaintiff's claims are superpreempted," which they are, "then they are also defensively preempted." *Id.* Therefore, the court finds that the claims asserted by the plaintiffs are defensively preempted by ERISA. As such, those claims should be dismissed and recast as claims under ERISA. And because there is no right to a jury under ERISA, the plaintiffs' demands for a jury will be stricken. *Hunt v. Hawthorne Associates, Inc.,* 119 F.3d 888, 907 (11th Cir.1997).

## V. CONCLUSION

For the foregoing reasons, it is OR-DERED as follows:

With regard to the case of *Boone v. Health Strategies, Inc., et al.,* Civil Action No. 01–T–445–E,

(1) The motion to remand, filed by plaintiff Noel Boone on April 27, 2001 (Doc. no. 10), is denied.

(2) The following motions, all filed on April 12, 2001, are granted:

(a) Defendant American Hospitality Association's motion to dismiss and to strike state law claims (Doc. no. 7);

(b) Defendant Capital Risk Management, Inc.'s motion to dismiss and to strike state law claims (Doc. no. 6);

(c) Defendants Ronald D. Howard d/b/a American Hospitality Association and Ronald D. Howard d/b/a Capital Risk Management, Inc.'s motion to dismiss and to strike state law claims (Doc. no. 8);

(d) Defendants Ronald D. Howard d/b/a American Hospitality Association and Ronald D. Howard d/b/a Capital Risk Management, Inc.'s motion to strike jury demand (Doc. no. 5).

With regard to the case of *Ingram v. Health Strategies, Inc., et al.,* Civil Action. No. 01–T–446–E,

(1) The motion to remand, filed by plaintiff Pamela Ingram on April 27, 2001 (Doc. no. 10), is denied.

(2) The following motions, all filed on April 12, 2001, are granted:

(a) Defendant American Hospitality Association's motion to dismiss and to strike state law claims (Doc. no. 6);

(b) Defendant Capital Risk Management, Inc.'s motion to dismiss and to strike state law claims (Doc. no. 7);

(c) Defendants Ronald D. Howard d/b/a American Hospitality Association and Ronald D. Howard d/b/a Capital Risk Management, Inc.'s motion to dismiss and to strike state law claims (Doc. no. 8); ·

(d) Defendants Ronald D. Howard d/b/a American Hospitality Association and Ronald D. Howard d/b/a Capital Risk Management, Inc.'s motion to strike jury demand (Doc. no. 5).

With regard to the case of *Britton v. Health Strategies, Inc., et al.,* Civil Action No. 01–T–447–E,

(1) The motion to remand, filed by plaintiff Glenn Britton on April 27, 2001 (Doc. no. 12), is denied.

(2) The following motions, all filed on April 12, 2001, are granted:

(a) Defendant American Hospitality Association's motion to dismiss and to strike state law claims (Doc. no. 8);

(b) Defendant Capital Risk Management, Inc.'s motion to dismiss and to strike state law claims (Doc. no. 7);

(c) Defendants Ronald D. Howard d/b/a American Hospitality Association and Ronald D. Howard d/b/a Capital Risk Management, Inc.'s motion to dismiss and to strike state law claims (Doc. no. 6);

(d) Defendants Ronald D. Howard d/b/a American Hospitality Association and Ronald D. Howard d/b/a Capital Risk Management, Inc.'s motion to strike jury demand (Doc. no. 10).

With regard to the case of *Matthews v. Health Strategies, Inc., et al.,* Civil Action No. 01–T–448–E,

(1) The motion to remand, filed by plaintiff Janet Matthews on April 27, 2001 (Doc. no. 11), is denied.

(2) The following motions, all filed on April 12, 2001, are granted:

(a) Defendant American Hospitality Association's motion to dismiss and to strike state law claims (Doc. no. 4);

(b) Defendant Capital Risk Management, Inc.'s motion to dismiss and to strike state law claims (Doc. no. 5);

(c) Defendants Ronald D. Howard d/b/a American Hospitality Association and Ronald D. Howard d/b/a Capital Risk Management, Inc.'s motion to dismiss and to strike state law claims (Doc. no. 6);

(d) Defendants Ronald D. Howard d/b/a American Hospitality Association and Ronald D. Howard d/b/a Capital Risk Management, Inc.'s motion to strike jury demand (Doc. no. 10).

As to all of the cases, it is further ORDERED that the plaintiffs' non-ERISA claims are dismissed and their jury demands struck, and that the plaintiffs are allowed until August 14, 2002, to amend their complaints to allege claims under the Employee Retirement Income Security Act of 1974, 29 U.S.C.A. §§ 1001–1461; otherwise their lawsuits shall be dismissed.