**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 04-2370**

———————

KENNY CASSELMAN,

Plaintiff - Appellant,

versus

AMERICAN FAMILY LIFE ASSURANCE COMPANY OF
COLUMBUS,

Defendant - Appellee.

———————

**No. 04-2378**

———————

JOHN P. ETHRIDGE,

Plaintiff - Appellant,

versus

AMERICAN FAMILY LIFE ASSURANCE COMPANY OF
COLUMBUS,

Defendant - Appellee.

———————

Appeals from the United States District Court for the District of
South Carolina, at Charleston.  C. Weston Houck, Senior District
Judge.  (CA-03-3859-12-2; CA-03-3953-2-12)

———————

Argued:  May 25, 2005                    Decided:  June 24, 2005

———————

Before LUTTIG and SHEDD, Circuit Judges, and Eugene E. SILER, Jr., Senior Circuit Judge of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

———————

Affirmed in part, reversed in part, and remanded by unpublished opinion. Judge Luttig wrote the opinion, in which Judge Shedd and Senior Judge Siler joined.

———————

**ARGUED:** William Stuart Duncan, Georgetown, South Carolina, for Appellants. David Wright Overstreet, CARLOCK, COPELAND, SEMLER & STAIR, L.L.P., Charleston, South Carolina; Patrick Connors DiCarlo, ALSTON & BIRD, Atlanta, Georgia, for Appellee. **ON BRIEF:** Raymond C. Fischer, DUNCAN, CROSBY & MARING, L.L.C., Georgetown, South Carolina, for Appellants. Thomas S. Carlock, CARLOCK, COPELAND, SEMLER & STAIR, L.L.P., Atlanta, Georgia, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

LUTTIG, Circuit Judge:

Plaintiffs-appellants Kenny Casselman and John Ethridge filed suit in federal district court against defendant-appellee American Family Life Assurance Company (AFLAC), seeking insurance coverage for injuries under a policy they purchased from AFLAC. The district court granted partial summary judgment to AFLAC on the ground that ERISA preempted plaintiffs' claims. The district court also granted summary judgment to the defendant on the ground that plaintiffs' claims were not covered by the insurance policy and defendant's refusal to pay those claims was not in bad faith. For the reasons that follow, we affirm the district court's holding that plaintiffs' claims are preempted by ERISA, but reverse its grant of summary judgment on the question of coverage and bad faith.

I.

Casselman and Ethridge were employees of Georgetown Steel Corporation (GSC). In the early 1990s, the Steelworkers Union requested that the company permit hourly employees to purchase supplemental insurance on a pre-taxed basis. J.A. 427. GSC agreed, but required the employees to select two companies to offer these plans, which the union did. J.A. 427-28. In 1995, AFLAC became one of the companies whose policies were offered to hourly employees. J.A. 428.

Casselman and Ethridge each purchased an AFLAC supplemental insurance policy with a sickness rider and an off-the-job accident disability rider. J.A. 159-60; 242-43. After they had purchased the insurance policies, each was injured in a separate accident that occurred while at work. J.A. 436. Casselman slipped and fell, rupturing a disk in his back. J.A. 188. The ruptured disk injured the sciatic nerve, causing problems with Casselman's leg and foot that precluded his return to work. J.A. 185. Casselman's doctor alleges that Casselman has a lumbar disc disorder. J.A. 309. Ethridge hurt his knee in a fall. J.A. 248-51. His doctor submitted an affidavit that Ethridge suffered degenerative arthritis of the right knee and a right knee disorder. J.A. 311. Both men represent that their now disabling health problems did not afflict them until after their on-the-job falls. J.A. 218-19, 253.

The plaintiffs sued AFLAC for coverage of their disabling injuries under the sickness rider they had purchased from AFLAC, alleging that these injuries fell under the policy's definition of sickness. They also alleged that AFLAC had acted in bad faith by not paying their claims. The defendant sought partial summary judgment on the grounds that ERISA preempted plaintiffs' claims and sought summary judgment on the question of coverage. The district court granted both of these motions.

On appeal, we review the district court's grant of summary judgment de novo. Higgins v. E.I. Du Pont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir. 1988). Summary judgment is appropriate only if the moving party demonstrates that "no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." Kimmell v. Seven Up Bottling Co., 993 F.2d 410, 412 (4th Cir. 1993).

A.

The district court did not provide any reasoning for its conclusion that ERISA preempted plaintiffs' claims. Both parties agree that the correctness of the district court's determination depends entirely on whether the AFLAC plan falls within a safe harbor exception removing certain plans from ERISA coverage.

The safe harbor exception provides as follows:

(j) Certain group or group-type insurance programs. For purposes of Title I of the Act and this chapter, the terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which

(1) No contributions are made by an employer or employee organization;
(2) Participation [in] the program is completely voluntary for employees or members;
(3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums

through payroll deductions or dues checkoffs and to remit them to the insurer; and

(4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j). AFLAC maintains that GSC exceeded the limited employer role outlined in (1), (3), and (4), thereby removing the plan from the reach of the safe harbor provision. Because the employer served functions other than those outlined in (3), the safe harbor is inapplicable and we need not reach AFLAC's remaining arguments.

Courts applying the safe harbor exception have emphasized that employers can only assume a very limited role with respect to the plan if the third prong is to be satisfied. See Butero v. Royal Maccabees Life Ins. Co., 174 F.3d 1207, 1213 (11th Cir. 1999) ("The regulation explicitly obliges the employer who seeks its safe harbor to refrain from any functions other than permitting the insurer to publicize the program and collecting premiums.") (emphasis in original); Hansen v. Continental Ins. Co., 940 F.2d 971, 977 (5th Cir. 1991) (similar). Here, it is clear that the limited functions outlined in the regulation -- permitting publicizing of the program, collecting premiums, and remitting them to the insurer -- were exceeded by the company.

The plan administrator testified in a deposition that GSC "chose to exclude salaried employees from participation in the

plan," J.A. 344, an exclusion reflected in the plan documents. J.A. 407. Notwithstanding the Union's request for coverage specifically for hourly employees, plaintiffs present no evidence to contradict the administrator's representation that the _employer_ selected the type of employees who would be eligible for the program. Although the Union selected the plans that would be offered based on a vote of its membership, J.A. 428, the employer reviewed those plans, and the plan administrator testified that "[i]f they had come in here with somebody that was marginal or, you know, less than having a good company rating, we would have advised them that we didn't have much confidence in this carrier." J.A. 366. To ensure that AFLAC was a "reputable and well thought of insurance company," GSC engaged a consulting firm to investigate AFLAC. J.A. 387.

Both determining eligibility criteria and selecting the insurance company have been found relevant to the determination of whether the safe harbor is applicable. _See_ _Butero_, 174 F.3d at 1213 (recognizing, in holding the safe harbor inapplicable, that the employer picked the insurer and deemed certain employees ineligible to participate). Given the unequivocal language of the regulation limiting functions of the employer to the enumerated tasks, we conclude that the employer exceeded the bounds of the permissible interaction with the program under the safe harbor.

The plaintiffs urge a contrary conclusion by focusing on a Department of Labor Advisory Opinion interpreting section 2510.3-1(j), which describes an employer as "endorsing" a program within the meaning of (j)(3) if "the employer or employee organization expresses to its employees or members any positive, normative judgment regarding the program." Op. Dep't of Labor 94-25a (1994), 1994 ERISA LEXIS 29, at *7. Plaintiffs argue that GSC did not endorse the program under this definition, and thus that the safe harbor applies. But the Advisory Opinion's discussion of endorsement does not purport to be a definition of section 2510.3-1(j)(3) in its entirety, but only an explanation of what constitutes "endorsement." Contrary to plaintiff's apparent reading of section (j)(3), under the plain terms of that section, an employer can violate (j)(3) by exceeding the specifically enumerated permissible activities, even if such extra activity does not involve "endorsement." In fact, the advisory opinion held that the safe harbor was not only inapplicable because the employer had endorsed the program at issue, but also because the employer had exceeded the specific function limitations of section 2510.3-1(j)(3). Id. at *8. The advisory opinion thus does not impact our conclusion that the employer's functions exceeded those permitted

by the safe harbor exception, regardless of whether such functions entailed "endorsement."[1]

The group insurance program under which the plaintiffs purchased their insurance is thus an ERISA plan. And "when the validity, interpretation or applicability of a plan term governs the participant's entitlement to a benefit or its amount, the claim for such a benefit falls within the scope of" ERISA's coverage provision, 29 U.S.C. § 1132(a), which provides "the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits." Singh v. Prudential Health Care Plan, Inc., 335 F.3d 278, 291 (4th Cir. 2003). Plaintiffs' claims clearly depend upon the interpretation of the language of the plan, specifically of the term "sickness." These claims are thus preempted under ERISA and the district court properly granted partial summary judgment in favor of the defendant with respect to ERISA preemption.

---

[1] Although a plan that satisfies the provisions of the safe harbor is necessarily excluded from coverage under ERISA, an insurance plan that does not fall within the safe harbor may still fail to qualify as a plan covered by ERISA. See Butero, 174 F.3d at 1214; Hansen, 940 F.2d at 976-77. But plaintiffs do not argue that the plan fails to qualify as an ERISA plan at all, but only that it is excepted from ERISA coverage by the safe harbor exception.

B.

We do not dismiss a claim that is preempted by ERISA, but rather "treat it as a federal claim under [29 U.S.C. § 1132]."[2] Darcangelo v. Verizon Communications, Inc., 292 F.3d 181, 195 (4th Cir. 2002). We have held that "the plain language of an ERISA plan must be enforced in accordance with 'its literal and natural meaning.'" United McGill Corp. v. Stinnett, 154 F.3d 168, 172 (4th Cir. 1998). Looking to the literal meaning of the terms in the AFLAC policy purchased by plaintiffs, it is clear that the district court erred in granting summary judgment to the defendant.

The policy purchased by plaintiffs provides that "[i]f you [plaintiffs] are Totally Disabled due to Sickness, we will pay you one-thirtieth of the benefit shown in the Policy Schedule for each day you remain disabled." J.A. 124. "Sickness" is defined as "a disease or disorder first manifested more than 30 days after your Effective Date of coverage and while coverage is in force." J.A. 109.

The defendant urges that any disorder that is caused by a workplace fall is necessarily outside the rider's definition of "sickness." But the sickness rider places no limitations on the permissible causes of a disorder that can constitute "sickness." Plaintiffs allege that they now suffer from long-term physical

---

[2] To the extent the claims seek remedies that fall outside the scope of 29 U.S.C. § 1132(a), however, those claims are rejected as preempted. Singh, 335 F.3d at 290.

problems, namely lumbar disc disorder and right knee disorder.  The ordinary meaning of "disorder," as it appears in the policy's definition of "sickness," encompasses those problems <u>regardless</u> of their direct cause.  The ordinary meaning of "disorder" is "a derangement of function: an abnormal physical or mental condition: sickness, ailment, malady."  <u>Webster's Third New Int'l Dictionary</u> 652 (1986).  Each plaintiff clearly alleges that he suffers from a debilitating condition which is both a derangement of function and an abnormal physical condition, and thus each plaintiff suffers from "sickness" under the policy definition, at least for the purpose of defeating defendant's motion for summary judgment.  By defining "sickness" in terms of "disorder" and without regard to cause, the policy forecloses defendant's narrow definition of sickness and encompasses the plaintiffs' physical disorders arising from their on-the-job accidents.

To counteract the policy's language, AFLAC focuses on the fact that the plaintiffs selected a sickness rider and <u>failed</u> to select an on-the-job disability rider, which also would clearly have covered their claims.  But the fact that the plaintiffs did not select the on-the-job rider is irrelevant, given that the sickness rider that they did select provides, by its terms, coverage for the disorders for which they seek payment.

CONCLUSION

For the reasons stated herein, the judgment of the district court that the plaintiffs' claims are preempted by ERISA is affirmed. The district court's grant of summary judgment in favor of defendants on the plaintiffs' claims for coverage and bad faith refusal to pay is reversed, and the case is remanded for further proceedings consistent with this opinion.

<u>AFFIRMED IN PART</u>,
<u>REVERSED IN PART</u>,
<u>AND REMANDED</u>